FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 03, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEANNINE R.,<br><br>                    Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI, ACTING<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>                    Defendant. | NO:  1:19-CV-03275-FVS<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

    BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 20, 21.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by Attorney D. James Tree.  Defendant is

---

    [1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit.  No further action need be taken to continue this suit.  *See* 42 U.S.C. § 405(g).

ORDER ~ 1

represented by Special Assistant United States Attorney Ryan Lu.  The Court has

reviewed the administrative record, the parties' completed briefing, and is fully

informed.  For the reasons discussed below, the Court **GRANTS, in part,**

Plaintiff's Motion for Summary Judgment, ECF No. 20, and **DENIES** Defendant's

Motion for Summary Judgment, ECF No. 21.

### JURISDICTION

Plaintiff Jeannie R.[2] filed for Supplemental Security Income (SSI) and

Disability Insurance Benefits (DIB) on February 29, 2012, Tr. 98, alleging an onset

date of February 1, 2011, Tr. 212, 219, due to high blood pressure, diabetes,

plantar fibroma, cataracts, rhegmatogenous retinal detachment, and depression, Tr.

253.  Plaintiff's DIB application was denied initially because her date last insured

for benefits was December of 2010, which predates the alleged onset date.  Tr.

123.  Plaintiff's SSI application was denied initially, Tr. 127-35, and upon

reconsideration, Tr. 139-47.  A hearing before Administrative Law Judge Timothy

Mangrum ("ALJ") was conducted on March 10, 2014.  Tr. 37-84.  Plaintiff was

represented by counsel and testified at the hearing.  *Id.*  The ALJ also took the

testimony of vocational expert Kimberly Mullinax.  *Id.*  The ALJ denied SSI

benefits on July 25, 2014.  Tr. 21-31.  The Appeals Council denied review on

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's

first name and last initial, and, subsequently, Plaintiff's first name only, throughout

this decision.

ORDER ~ 2

February 1, 2016.  Tr. 1-5.  Plaintiff requested judicial review of the ALJ decision by this Court on April 1, 2016.  Tr. 637-39.  Following a stipulated motion by the parties, this Court remanded the case back to the ALJ for additional proceedings on January 30, 2017.  Tr. 648-54.

The ALJ held a second hearing on September 13, 2018, took the testimony of Plaintiff, and sent Plaintiff for a visual consultative evaluation.  Tr. 591-608. The ALJ held a third hearing on July 16, 2019 and took the testimony of Plaintiff and vocational expert Todd Gendreau.  Tr. 561-90.  The ALJ denied benefits on August 5, 2019.  Tr. 535-51.  The Appeals Council did not exercise jurisdiction in the period prescribed by 20 C.F.R. § 416.1484(a); therefore, the ALJ's August 5, 2019 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 39 years old at the amended onset date.  Tr. 219.  The highest grade she completed was the eighth, and she received special training as a CNA in 1986.  Tr. 254.  Plaintiff's work history includes positions as a CNA and crew supervisor at a nonprofit.  Tr. 254.  At application, Plaintiff stated that she stopped working on July 31, 2009 due to her conditions.  Tr. 253.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. §§ 405(g), 1383(c).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless.  *Id*.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date, February 29, 2012.  Tr. 537.  At step two, the ALJ found that Plaintiff had the following severe impairments: aortic aneurysm (stable); diabetes mellitus; low vision, status post multiple optical

procedures; depression; and substance abuse.  Tr. 538.  At step three, the ALJ

found that Plaintiff did not have an impairment or combination of impairments that

meet or medically equaled the severity of a listed impairment.  Tr. 539.  The ALJ

then found that Plaintiff had the RFC to perform light work as defined in 20 CFR §

416.967(b) with the following limitations:

> frequent handling and fingering; must avoid even moderate exposure to
> extreme wetness and cold; limited to unskilled work; can have
> occasional interaction with co-workers; cannot have public interaction;
> can have no requirement to read instructions or write reports; can read
> print the size of newspaper or book print only at close range; her far
> acuity is non-existent; can exercise occasional near visual acuity; and
> has limits on peripheral vision to occasional at best.

Tr. 541.

At step four, the ALJ identified Plaintiff's past relevant work as a nurse

assistance, home attendant, and employment training specialist, and found that

Plaintiff was unable to perform her past relevant work.  Tr. 549.  At step five, the

ALJ found that considering Plaintiff's age, education, work experience, and RFC,

there were other jobs that exist in significant numbers in the national economy that

Plaintiff could perform, including: press operator; scaling machine operator; and

cutting machine off bearer.  Tr. 550.  On that basis, the ALJ concluded that

Plaintiff was not under a disability, as defined in the Social Security Act, from

February 29, 2012, the date of application, through the date of his decision.  Tr.

550.

///

1

**ISSUES**

2          Plaintiff seeks judicial review of the Commissioner's final decision denying

3     her SSI under Title XVI of the Social Security Act.  ECF No. 20.  Plaintiff raises

4     the following issues for this Court's review:

5          1.  Whether the ALJ made a proper step five determination;

6          2.  Whether the ALJ properly considered Plaintiff's symptom statements;

7          3.  Whether the ALJ made a proper step two determination; and

8          4.  Whether the ALJ properly considered the medical opinion evidence.

9                                   **DISCUSSION**

10    1.    **Step Five**

11         Plaintiff argues that two out of the three jobs the vocational expert identified

12    following the ALJ's hypothetical as matching the RFC determination were actually

13    inconsistent the RFC.  ECF No. 20 at 10-11.  Specifically, Plaintiff argues that the

14    job of press operator includes frequent exposure to wetness and humidity and the

15    job of scaling machine operator includes occasional exposure to wetness and

16    humidity.  *Id.* at 11.  She asserts that this is inconsistent with the preclusion from

17    moderate exposure to extreme wetness.  *Id.*  She asserts that if these two jobs are

18    precluded by Plaintiff's RFC, the only remaining job would be machine-off bearer,

19    which does not exist in significant number in the national economy to support the

20    ALJ's step five determination.  *Id.*

21         At step five, the burden shifts to the Commissioner to show that the claimant

retains the ability to perform other gainful activity. *Beltran*, 700 F.3d at 389. To support a finding that a claimant is not disabled at step five, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." *Id*.; 20 C.F.R. § 416.912(b)(3).

ALJs routinely rely on the Dictionary of Occupational Titles (DOT) "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. § 416.966(d)(1) (stating the DOT is a source of reliable job information). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling ("S.S.R.") 00-4p). But a failure to inquire can be deemed harmless error where there is no apparent conflict or the vocational expert provides sufficient support to justify deviation from the DOT. *Id*. at 1154 n.19.

In order for an ALJ to accept a vocational expert's testimony that contradicts the DOT, the record must contain " 'persuasive evidence to support the deviation.'" *Id*. at 1153 (quoting *Johnson*, 60 F.3d at 1435). Evidence sufficient to

permit such a deviation may be either specific findings of fact regarding the

claimant's residual functionality, or inferences drawn from the context of the

expert's testimony.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997).

Here, the ALJ failed to inquire whether the vocational expert's testimony

conflicted with the DOT.  Tr. 582-88.  The vocational expert volunteered that a

portion of his testimony concerning a limitation to sedentary work was inconsistent

with the DOT, Tr. 587-88, but the ALJ failed to inquire regarding his testimony as

a whole and its consistence with the DOT.  Plaintiff's argument presents an

apparent inconsistency between the vocational expert's opinion regarding

Plaintiff's RFC allowing for the jobs of press operator and scaling machine

operator due to the level of exposure to wetness and humidity.  Defendant argues

that the ALJ's RFC determination precluded Plaintiff from even moderate

exposure to extreme wetness and the DOT job descriptions do not address extreme

wetness for these jobs.  ECF No. 21 at 19.  However, the ALJ's failure to follow

S.S.R. 00-4p in this case constitutes harmful error because there is an apparent

conflict between the vocational expert's testimony and the DOT.  Therefore,

remand is appropriate to address this apparent conflict by taking the testimony of a

vocational expert.

## 2.    Plaintiff's Symptom Statements

Plaintiff argues that the ALJ erred in his treatment of her symptom

statements.  ECF No. 20 at 18-21.

1     An ALJ engages in a two-step analysis when evaluating a claimant's

2     testimony regarding subjective pain or symptoms.  "First, the ALJ must determine

3     whether the claimant has presented objective medical evidence of an underlying

4     impairment which could reasonably be expected to produce the pain or other

5     symptoms alleged."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  "The

6     claimant is not required to show that his impairment could reasonably be expected

7     to cause the severity of the symptom he has alleged; he need only show that it

8     could reasonably have caused some degree of the symptom."  *Id*.

9     Second, "[i]f the claimant meets the first test and there is no evidence of

10    malingering, the ALJ can only reject the claimant's testimony about the severity of

11    the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

12    rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

13    citations and quotations omitted).  "General findings are insufficient; rather, the

14    ALJ must identify what testimony is not credible and what evidence undermines

15    the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

16    Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

17    must make a credibility determination with findings sufficiently specific to permit

18    the court to conclude that the ALJ did not arbitrarily discredit claimant's

19    testimony.").  "The clear and convincing [evidence] standard is the most

20    demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995,

21    1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920,

924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  Tr. 542. Specifically, the ALJ found that Plaintiff's statements were "inconsistent because the claimant's visual problems were corrected with surgery and lens refraction, she had poor control of her diabetes due to non-compliance and loss of follow-up, [and] her aortic aneurysm occurred only very recently."  *Id*.

A.    **Corrected Vision Impairments**

The ALJ found that Plaintiff's vision problems were corrected with surgery and lens refraction.  Tr. 542.

On February 7, 2011, Plaintiff's uncorrected vision was 20/200 bilaterally and her new acuity was 20/30 bilaterally.  Tr. 410-11.  She was diagnosed with myopia bilaterally and a retinal detachment in the left eye.  Tr. 412.  On March 14, 2011, she had inflammatory keratitis and cataracts in the left eye.  Tr. 417. On May 16, 2011, Dr. Hopp also stated that Plaintiff had scarring of the cornea in the left eye and nuclear sclerosis in the right eye.  Tr. 459.  On June 2, 2011, Plaintiff reported that she could not see out the left eye at all and sometimes experienced pain the left eye. Tr. 450.  On September 12, 2011, Plaintiff had surgery in the left

eye. Tr. 444. By October 14, 2011, Plaintiff was complaining of pain in the left

eye and regular headaches. Tr. 443. Her vision in the left eye was still impaired

by February 10, 2012 affecting her driving and her ability to go up or down stairs.

Tr. 442. When she was seen in April of 2012, a second surgery was scheduled.

Tr. 483. Plaintiff had cataract surgery in the left eye on May 10, 2012. Tr. 484-86.

On October 30, 2012, Plaintiff's uncorrected distance vision was 20/200 and

corrected vision was 20/100. Tr. 1132.

At the hearing, Plaintiff testified that her insurance did not cover glasses.

Tr. 567. She reported that she could not afford her glasses due to the out-of-pocket

cost of $87.00. Tr. 568, 574-75, 578. Plaintiff reported that she could read as long

as she was close to what she was reading, but she could not use a computer. Tr.

573. She reported that she could read about a paragraph before she "start[s] going

blind and I have to refocus." Tr. 577. She reported that reading causes headaches

and dizziness. *Id*.

"Impairments that can be controlled effectively with medication are not

*Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). However,

failure to follow a course of treatment may be excused if the claimant cannot

afford the treatment, *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Here,

the ALJ found that Plaintiff's vision problems could be corrected with surgery and

glasses. Tr. 542-43. But, Plaintiff repeatedly reported that she could not afford her

glasses. Tr. 568, 574-75, 578. In October of 2018, Douglas Ricks, O.D. stated "it

is my opinion that Jeannine has significant field loss OS secondary to her retinal

detachment.  Vision is significantly improved with glasses.  I recommend she wear

them full time.  She should avoid activities that require full peripheral vision and

should be monitored x 6 months."  Tr. 1147.

The ALJ concluded that Plaintiff's inability to afford glasses that would

correct her vision while continuing to spend money on illicit substances rendered

her statements unreliable.  Tr. 542, 546.  An ALJ may properly consider evidence

of a claimant's substance use in assessing credibility.  *Thomas*, 278 F.3d at 959

(ALJ's finding that claimant was not a reliable historian regarding drug and

alcohol usage supports negative credibility determination); *Verduzco v. Apfel*, 188

F.3d 1087, 1090 (9th Cir. 1999) (conflicting or inconsistent testimony concerning

alcohol or drug use can contribute to an adverse credibility finding); *Edlund v.*

*Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (ALJ properly considered drug-

seeking behavior).  However, in this case, the ALJ focuses on the funds Plaintiff

spent on illicit substances.  In doing so, the ALJ failed to point to any evidence that

Plaintiff was spending her funds on illicit substances. The record only

demonstrates the presence of substances in her system, not the purchase of

substances.  Tr. 1060-61 (urine screen positive for methamphetamines and

marijuana on November 14, 2017); Tr. 1170, 1180, 1199 (urine screen positive for

methamphetamines and marijuana on April 11, 2019); Tr. 1183 (Plaintiff admitted

to daily cannabis use).  Furthermore, there is evidence suggesting that Plaintiff

received methamphetamine from her family or friends.  In November of 2014 while Plaintiff was hospitalized, her family and friends came to see her, including her daughters who were actively using meth.  Tr. 1084.  After her visitors left, Plaintiff "stripped off her clothes and was running away from 'candy wrappers.'" *Id*.

Here, the ALJ failed to support his conclusion that Plaintiff was spending money on illicit substances instead of glasses.  Furthermore, a review of the record failed to support his conclusion.  Therefore, this reason is not supported by substantial evidence.

### B.    Treatment Non-compliance

The ALJ's second reason for rejecting Plaintiff's symptom statements, that she had poor control of her diabetes due to non-compliance, is not specific, clear and convincing.

Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints.  20 C.F.R. § 416.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (finding the ALJ's decision to reject the claimant's subjective pain testimony was supported by the fact that claimant was not taking pain medication).

The ALJ concluded that Plaintiff "had poor control of her diabetes due to non-compliance and loss of follow-up."  Tr. 542.  To support his finding, the ALJ

summarized the medical evidence demonstrating Plaintiff's lack of following

prescribed treatment, including failing to check her glucose levels.  Tr. 543. While

the ALJ provided citations to the record demonstrating that Plaintiff had poor

control of her diabetes, he failed to state how this rendered her statements

unreliable.  The ALJ stated that despite her non-compliance, Plaintiff's A1c

dropped and her physical complaints were not associated with her diabetes.  Tr.

543.  Without some rationale as to how Plaintiff's treatment non-compliance

undermined her statements, the ALJ's reason fails to meet the specific, clear and

convincing standard.  *Ghanim*, 763 F.3d at 1163 ("General findings are

insufficient; rather, the ALJ must identify what testimony is not credible and what

evidence undermines the claimant's complaints.").

## C.    Recent Aortic Aneurysm

The ALJ's third reason for rejecting Plaintiff's symptom statements, that

"her aortic aneurysm occurred only very recently," is not specific, clear and

convincing.

The Ninth Circuit has stated the following:

> To establish a claimant's eligibility for disability benefits under the
> Social Security Act, it must be shown that: (a) the claimant suffers from
> a medically determinable physical or mental impairment that can be
> expected to result in death or that has lasted or can be expected to last
> for a continuous period of not less than twelve months; and (b) the
> impairment renders the claimant incapable of performing the work that
> the claimant previously performed and incapable of performing any
> other substantial gainful employment that exists in the national
> economy.

*Tackett*, 180 F.3d at 1098; 42 U.S.C. § 1382c(a)(3)(A).  This required twelve months is referred to as the durational requirement.

The ALJ determined that Plaintiff's aortic aneurysm met this durational requirement by finding it was a severe, medically determinable impairment at step two.  Tr. 538.  In support of his determination that the recentness of the aortic aneurysm undermined Plaintiff's symptoms statements, the ALJ summarized the medical evidence surrounding the aneurysm.  Tr. 544-45.  However, the ALJ failed to state how the recent aortic aneurysm undermined Plaintiff's statements.  Therefore, this fails to meet the specific, clear and convincing standard.

In conclusion, the ALJ failed to provide a specific, clear and convincing reason for rejecting Plaintiff's symptom statements.  The case is remanded for the ALJ to properly address such statements.

**3.    Step Two**

Plaintiff challenges the ALJ's step two determination by asserting that Plaintiff's cerebrovascular accident (CVA) in 2017, hypertension (HTN), plantar fibrosis, back and right leg symptoms, and carpal tunnel syndrome were not severe. ECF No. 20 at 8-12.

To show a severe impairment, the claimant must first establish the existence of a medically determinable impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the

existence of an impairment.  20 C.F.R. § 416.921.  "[O]nce a claimant has shown that he suffers from a medically determinable impairment, he next has the burden of proving that these impairments and their symptoms affect his ability to perform basic work activities."  *Edlund*, 253 F.3d at 1159-60.  At step two, the burden of proof is squarely on the Plaintiff to establish the existence of any medically determinable impairment(s) and that such impairments(s) are severe.  *Tackett*, 180 F.3d at 1098-99 (In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits.).

The step-two analysis is "a de minimis screening device used to dispose of groundless claims."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).  An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities."  20 C.F.R. § 416.922(a).  Basic work activities are "abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.922(b).

The case is remanded for the ALJ to properly address Plaintiff's symptom statements.  Upon remand, the ALJ will also readdress the impairments that are found to be severe at step two.

**4.    Medical Opinions**

Plaintiff argues that the ALJ failed to properly weigh the opinions from Jhoe Dumiao, M.D., Charles Sung, M.D., Derek J. Leienback, M.D., Portia Jones, M.D., Marciano Capati, M.D., and Jennie Herrington, D.O.  ECF No. 20 at 12-18.

If a treating or examining physician's opinion is uncontradicted, the ALJ

may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830-31).

Since the case is remanded for the ALJ to properly address Plaintiff's symptom statements, the ALJ will readdress the opinion evidence.

## CONCLUSION

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry*, 903 F.2d at 1280; *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a

claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate are appropriate for the ALJ to properly question the vocational expert. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, further administrative proceedings are necessary to properly address Plaintiff's severe impairments at step two, Plaintiff's symptom statements, medical opinions in the file, and a new step five determination. Therefore, the Court remands this case for further proceedings consistent with this Order.

On remand, the case shall be assigned to a new ALJ who shall supplement the record with any outstanding medical evidence and call a vocational expert to address any step four or five determinations at remand proceedings.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 20, is **GRANTED, in part,** and the matter is remanded for further proceedings consistent with this Order.

///

///

2. Defendant's Motion for Summary Judgment, ECF No. 21 is **DENIED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Plaintiff, and **CLOSE** the file.

DATED: September 3, 2021



Stanley A. Bastian
Chief United States District Judge

ORDER ~ 22